# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| ELIZABETH ANN BOSTIC DELGADO, )<br><br>    Plaintiff, )<br>)<br>v.  )<br>)<br>FRANK BISIGNANO, COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>)<br>    Defendant. ) | Case No. 3:25-cv-00492<br>Judge Frensley |

## MEMORANDUM OPINION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Child's Insurance Benefits ("CIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 11. Plaintiff has also filed supporting documents including a Memorandum in Support of the Plaintiff's Motion, a Declaration in Support, a Declaration of Service, and a Proposed Order. Docket Nos. 11-1 through 11-4. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 13. Plaintiff has additionally filed a Reply. Docket No. 14.

For the reasons stated below, Plaintiff's Motion (Docket No. 11) is **GRANTED**, and this matter is **REMANDED** for further proceedings consistent with this Memorandum Opinion.

## I. INTRODUCTION

Plaintiff protectively filed her application SSI on November 17, 2021, alleging that she had

been disabled since January 1, 2021 due to depressive disorder, PTSD, anxiety, panic disorder, and [GERD]. Docket No. 10 ("TR"), p. 310.[1]  On February 15, 2022, the claimant filed an application for child's insurance benefits, on the earnings record of Ronald Marcus Bostic, based on the same.[2]  TR 261-64; *see* 20 C.F.R. § 404.350 (providing that, under certain prescribed circumstances, an individual is entitled to child's benefits on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died). Plaintiff's applications were denied both initially (TR 82, 101) and upon reconsideration (TR 120, 129).  Plaintiff subsequently requested (TR 162-63) and received (TR 37-62) a hearing.  Plaintiff's hearing was conducted on January 8, 2024, by Administrative Law Judge ("ALJ") Shannon Heath.  TR 37. Plaintiff and vocational expert ("VE"), Donna Bardsley, appeared and testified.  *Id.*

On March 13, 2024, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 18-36. Specifically, the ALJ made the following findings of fact:

1. Born on March 5, 2002, the claimant had not attained age 22 as of January 1, 2021, the alleged onset date of disability (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. The claimant has not engaged in substantial gainful activity since January 1, 2021, the alleged onset date of disability (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[1] The record contains discrepancies regarding Plaintiff's date of filing for SSI. The ALJ and the parties agree that Plaintiff's filing date was November 17, 2021 (TR 18; Docket No 11-2, p. 4; Docket No. 13, p. 2), and SSA disability determinations refer to the same date (TR 101, 129). However, Plaintiff's application summary identifies November 30, 2021 as her application date. TR 251. With there being no reason for the Court to believe that this discrepancy affects the matters at issue in the case, the Court will proceed using the date agreed upon by the parties.

[2] The record contains discrepancies regarding Plaintiff's date of filing for child's insurance benefits. The ALJ and the parties agree that Plaintiff's filing date was February 15, 2022 (TR 18; Docket No 11-2, p. 4; Docket No. 13, p. 2), and SSA disability determinations refer to the same date (TR 82, 120). However, the only CIB application summary in the record identifies March 18, 2022 as the application date. TR 261. This application summary also reflects a name that does not match Plaintiff's. TR 262. With there being no reason for the Court to believe that this discrepancy affects the matters at issue in the case, the Court will proceed using the date agreed upon by the parties.

3. The claimant has the following severe impairments: posttraumatic stress disorder (PTSD), generalized anxiety disorder, social anxiety disorder, and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out simple tasks; can maintain concentration, persistence, or pace on such tasks with customary breaks spread throughout the workday; can interact appropriately with coworkers and supervisors; can interact with the public occasionally; and can adapt to occasional changes within this type of work setting.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 5, 2002, and was 18 years old, which is defined as a younger individual (ages 18-49) on the alleged disability onset date. As of the date of the decision, the claimant remains categorized as a younger individual (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2021, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

TR 21-22, 24, 29-30.

On May 13, 2024, Plaintiff timely filed a request for review of the hearing decision. TR 236-37. On March 31, 2025, the Appeals Council issued a letter declining to review the case (TR 9-13), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the

Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F. 2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F. 3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co.,* 305 U.S. at 229.

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F. 3d at 389, *citing Key v. Callahan*, 109 F. 3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole; however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F. 2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F. 2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r of Soc. Sec.*, 811 F. 3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.*, 741 F. 3d 708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F. 2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period

5

of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" not only

includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and

work experience, any other relevant work that exists in the national economy in significant

numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or

whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42

U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process summarized as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See*, e.g. 20 CFR §§ 404.1520, 416.920.  *See also Moon v. Sullivan*, 923 F. 2d 1175, 1181 (6th Cir.

1990).

6

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F .2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2); *see also Damron v. Sec'y of Health & Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends: (1) the ALJ erred by failing to properly evaluate social limitations by improperly rejecting the opined limitations of Dr. Starace, Dr. Mannis, and Dr. Dalton, and rejecting all opined social limitations and forming an RFC based on the ALJ's lay interpretation of the medical evidence and (2) the ALJ erred by failing to account for Plaintiff's impairments of IBS and GERD in formulating Plaintiff's RFC. Docket No. 11-2, p. 6. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed,

or in the alternative, remanded. Docket No. 11, p. 1.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934-35 (6th Cir. 2018), *citing Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

### 1. Weight Accorded to Medical Opinions

Plaintiff argues that the ALJ failed to adequately explain her analysis of the assessments of Dr. Starace, Dr. Mannis, and Dr. Dalton, rendering her rejection of those opinions improper. Docket No. 11-2, p. 6-15.

Defendant responds that the ALJ properly considered the medical opinions and prior administrative medical findings and that substantial evidence supports the ALJ's conclusion regarding the social limitations in the RFC. Docket No. 13, p. 4.

On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final

rules revised the policies for claims filed on or after March 27, 2017, and set forth the rules for evaluating opinion evidence (both medical and nonmedical). 20 C.F.R. §§ 404.1527, 416.927. *See* "Revisions to Rule Regarding the Evaluation of Medical Evidence," available at https://www.ssa.gov/disability/professionals/bluebook/revisions -- rules.html. Plaintiff filed his/her application after March 27, 2017. TR 18, 82, 101. As such, Plaintiff's case is governed by the rules that were implemented on March 27, 2017. *See* 20 C.F.R. § 404.614 (generally, an application for benefits is deemed filed on the day it is received by an SSA employee). The new regulations provide as follows:

> **(a) How we consider medical opinions and prior administrative medical findings.** We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in *paragraphs (c)(1) through (c)(5)* of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (*paragraph (c)(1)* of this section and consistency (*paragraph (c)(2)* . . . .

> **(b) How we articulate our consideration of medical opinions and prior administrative medical findings.** We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:

>> **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in *paragraphs (c)(1) through (c)(5)* of this section, as appropriate. We are not required to articulate how we considered each medical

9

opinion or prior administrative medical finding from one medical source individually.

**(2)  Most important factors.**  The factors of supportability (*paragraph (c)(1)* of this section) and consistency (*paragraph (c)(2)* of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be.  Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision.  We may, but are not required to, explain how we considered the factors in *paragraphs (c)(3) through (c)(5)* of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

**(3)  Equally persuasive medical opinions or prior administrative medical findings about the same issue.**  When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (*paragraph (c)(1)* of this section) and consistent with the record (*paragraph (c)(2)* of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in *paragraphs (c)(3) through (c)(5)* of this section for those medical opinions or prior administrative medical findings in your determination or decision.

**(c) Factors.**  We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case;

**(1)  Supportability.**  The more relevant the objective medical evidence and explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

**(2) Consistency.**  The more consistent a medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

**(3)  Relationship with the claimant.**  This factor combines consideration of the issues in *paragraphs (c)(3)(i) through (v)* of this section.

> **(i)  Length of the treatment relationship.**  The length of time a medical source has treated you may help demonstrate

10

whether the medical source has a longitudinal understanding of your impairment(s).

**(ii) Frequency of examinations.** The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

**(iii) Purpose of the treatment relationship.** The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

**(iv) Extent of the treatment relationship.** The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

**(v) Examining relationship.** A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

**(4) Specialization.** The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

**(5) Other factors.** We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

11

**(d) Evidence from nonmedical sources.** We are not required to articulate how we considered evidence from nonmedical sources using the requirements in *paragraphs (a)-(c)* in this section.

20 C.F.R. § 404.1520.

As the new regulation states, the ALJ will not defer or give any specific evidentiary weight to any medical opinion, even a treating source. 20 CFR § 404,1520c(a). However, the regulations nonetheless "require that the ALJ provide a coherent explanation of his reasoning." *Bly v. Dudek*, No. 3:24-CV-00957, 2025 U.S. Dist. LEXIS 86102, 2025 WL 1316497, at \*10 (M.D. Tenn. May 6, 2025) (quoting *Lester v. Saul*, No. 5:20-cv-01364, 2020 U.S. Dist. LEXIS 247187, 2020 WL 8093313, at \*14 (N.D. Ohio Dec. 11, 2020), report and recommendation adopted sub nom. *Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 U.S. Dist. LEXIS 6594, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021)). The regulations set aside supportability and consistency as the "most important" factors and impose a heightened responsibility upon ALJs to articulate their consideration of these factors. 20 CFR § 404,1520c(b)(2).

> For these two factors, the ALJ is required to "articulate how they considered the medical opinions and prior administrative medical findings" and specifically "explain how they considered the supportability and consistency factors" in "determining how persuasive they find a medical source's medical opinions or administrative medical findings to be." *Id.* § 404.1520c(a), (b)(2). This "mandatory articulation requirement" has been said to "serve the same purposes as the good reasons requirement of the treating physician rule" because "by requiring ALJs to articulate their analysis of the most important factors to consider ... the requirement permits meaningful judicial review" and "ensures that claimants will receive an explanation of why the ALJ found each medical opinion, including those of their treating physician, to be persuasive, partially persuasive, or not persuasive." *Lorraine R. v. Comm'r of Soc Sec. Admin.*, No. 3:20-cv-00396, 2022 U.S. Dist. LEXIS 166503, 2022 WL 4232839, \*4–\*5 (S.D. Ohio Sept. 14, 2022) (Gentry, M.J.).

> As to what the ALJ must do to meet this articulation requirement, "the Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement." *Gavre v. Comm'r of Soc. Sec.*, No. 3:20-CV-00551-DJH-CHL, 2022 U.S. Dist. LEXIS 45174, 2022 WL 1134293, at \*4 (W.D. Ky. Jan. 3, 2022) (Linsay, M.J.). However, "district courts applying the new regulations both within this circuit and throughout the country consistently apply

12

the articulation requirement literally," *id.*, in that they require the ALJ to "provide a coherent explanation of their reasoning," *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 43162, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021), "clearly explain their consideration of the opinion and identify the evidence supporting their conclusions," *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 247187, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), and otherwise "explain how they considered the supportability and consistency factors as to each medical opinion." *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 42246, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021). As some courts have framed the requirement, the ALJ must "build an accurate and logical bridge between the evidence and the ALJ's conclusion." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 116343, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)).

Specific instances in which courts have found an ALJ did not meet the articulation requirement include when the ALJ: (1) failed to account for all of the opined limitations in a medical source's opinions—whether in accepting or discounting the limitations, *see Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 907 (E.D. Mich. 2021) ("For Dr. Trostinkaia, the ALJ gave a terse reason for rejecting the opinion that the plaintiff had to take breaks to lie down during the workday, but there was no mention of the other limitations Dr. Trostinkaia found that were inconsistent with sedentary work."), (2) failed to specify which parts of a medical opinion were consistent or inconsistent with the record, *Israel v. Comm'r of Soc. Sec. Admin.*, No. 2:20-cv-11812, 2021 U.S. Dist. LEXIS 172090, 2021 WL 4130559, at *4 (E.D. Mich. Aug. 13, 2021), or (3) "failed to specifically cite to any examination findings or other evidence in the medical record" in support of their analysis. *King v. Kijakazi*, No. 1:20-CV-196-TAV-HBG, 2021 U.S. Dist. LEXIS 150963, 2021 WL 3520695, at *7 (E.D. Tenn. July 21, 2021), *report and recommendation adopted sub nom*, 2021 U.S. Dist. LEXIS 149870, 2021 WL 3516659 (E.D. Tenn. Aug. 10, 2021); *see also Hardy*, 554 F. Supp. 3d at 907 ("The ALJ did not refer to any of these medical findings in the record"). Essentially, courts have found the ALJ failed to meet the articulation requirements when they either failed to specify which portions of the medical source's opinion they agreed or disagreed with or failed to specify which portions of the record supported their conclusion.

As a final note, when citing to the record evidence in support of their conclusion, it is not sufficient that the ALJ previously provided an extensive review of the record evidence before discussing the opinions, *see Hardy*, 554 F. Supp. 3d at 907; *Miles v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-410, 2021 U.S. Dist. LEXIS 202840, 2021 WL 4905438, at *5 (S.D. Ohio Oct. 21, 2021), particularly when there is contradictory evidence within the ALJ's recitation. *See Hardy*, 554 F. Supp. 3d at 907. Similarly, it is not sufficient for the Commissioner to point to evidence in the record that would support the decision. *See id.* Rather, the ALJ must explicitly point out which evidence they are relying on to support their finding as to the persuasiveness of the opinion, so that the reviewing court and claimant can follow their logic.

*Sparks v. Kijakazi*, No. 2:21-CV-102-DCP, 2022 WL 4546346, at *6-7 (E.D. Tenn. Sept. 28, 2022) (citation modified).

### a. Dr. Starace's assessment

Robert Starace, Ph.D., reviewed the evidence and opined on Plaintiff's residual functional capacity as a part of Plaintiff's disability determination dated December 29, 2022. TR 94-100. With respect to social interaction limitations, Dr. Starace found Plaintiff's "ability to interact appropriately with the general public" to be "moderately limited," while Plaintiff was "not significantly limited" in all other social interaction categories, including the abilities "to ask simple questions or request assistance," "accept instructions and respond appropriately to criticism from supervisors," "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." TR 115-16. With respect to Plaintiff's adaptation limitations, Dr. Starace opined that Plaintiff's abilities to "respond appropriately to changes in the work setting" and "travel in unfamiliar places or use public transportation" were "moderately limited," but she was "not significantly limited" in her abilities to "be aware of normal hazards and take appropriate precautions" and "set realistic goals or make plans independently of others." TR 116. In summary, Dr. Starace remarked Plaintiff "can socially interact adequately and can adapt to changes in a low public contact setting." TR 117.

The ALJ summarized Dr. Starace's conclusion as follows:

[Dr. Starace] found the claimant has moderate mental limitations. Dr. Starace opined the claimant can understand/remember and execute simple tasks, can sustain concentration, persistence, or pace for simple tasks, can socially interact adequately, and can adapt to changes in a low public contact setting (Ex. 4A).

TR 28. Ultimately, the ALJ discounted Dr. Starace's opinion in part, stating:

The undersigned finds Dr. Starace's assessment is partially persuasive because it is generally consistent with the claimant's treatment records and reports of the

14

claimant's activities of daily living, which indicate the claimant has moderate mental limitations. However, Dr. Starace's assessment is not fully persuasive because it is not fully expressed in appropriate vocational terms in all areas for assessing mental limitations. Moreover, Dr. Starace's assessment is not specific vocationally in the claimant's social and adaptive functioning areas.

*Id.*

Plaintiff challenges the ALJ's rejection of Dr. Starace's assessment of Plaintiff's social interaction limitations. Docket No. 11-2, p. 10. Although the ALJ concluded that "Dr. Starace's assessment is not specific vocationally in the claimant's social and adaptive functioning areas," Plaintiff argues that the ALJ's failure to explain why this is so reflects a failure to provide a coherent analysis of Dr. Starace's opinion. *Id.*, quoting TR 28 (internal quotation marks omitted). Finally, Plaintiff points out that the RFC adopted by the ALJ appears consistent with Dr. Starace's opinion regarding social limitations, despite the rejection of his opinion on that matter. *Id.* at 10-11. "Thus," Plaintiff contends, "the analysis is confusing and illogical, it is unclear what was rejected." *Id.* at 11. The result, according to Plaintiff, is that the ALJ "failed to build a logical bridge" demonstrating the reasoning leading from Dr. Starace's opinion to the RFC adopted by the ALJ. *Id.*

Defendant contends that the ALJ appropriately considered Dr. Starace's opinion. Docket No. 13, p. 12. By stating that Dr. Starace's findings were partially persuasive because they were generally consistent with Plaintiff's treatment records and her reported activities of daily living, Defendant indicates, the ALJ considered the consistency factor. *Id.* Defendant points to the ALJ's statement that Dr. Starace's opinion was not fully persuasive because the social limitations were not specific vocationally as reflective of the ALJ's consideration of supportability. *Id.* In support of the ALJ's conclusion that Dr. Starace did not use appropriate vocational terms, Defendant provides an example: "Dr. Starace did not explain what he meant by 'low public contact.'" *Id.*,

quoting TR 92. In response to Plaintiff's final argument, Defendant argues that it "makes sense" that the RFC appeared consistent with Dr. Starace's opinion, as the ALJ found the opinion partially persuasive. *Id.* Defendant asserts that while the ALJ did not use Dr. Starace's "nonspecific" language, she appropriately "converted" it to "vocationally relevant terms." *Id.*

Plaintiff replies that Defendant's *post hoc* reasoning is not sufficient to establish what the ALJ meant by the statement that the social limitations were not specific vocationally. Docket No. 14, p. 2. Because the ALJ did not explain her reasoning, Plaintiff argues, "[w]e do not know if the ALJ 'converted' Dr. Starace's language into vocationally relevant terms or formulated the terms of the RFC another way." *Id.* at 2-3. Additionally, Plaintiff argues that although the ALJ rejected Dr. Dalton's opinion for the same reason, the ALJ does not explain why Dr. Dalton's opinion was not converted into vocationally relevant terms, rendering the decision internally inconsistent. *Id.* at 3.

The ALJ concluded that "Dr. Starace's assessment is not fully persuasive because it is not fully expressed in appropriate vocational terms in all areas for assessing mental limitations," and "[m]oreover, Dr. Starace's assessment is not specific vocationally in the claimant's social and adaptive functioning areas." TR 28. This Court has recently had occasion to consider similar language. *See Bly*, 2025 WL 1316497, at \*13-14 (considering the ALJ's conclusion that a doctor's opinion was less persuasive because it was "not expressed in appropriate vocational terms for assessing mental limitations"). Here, like in *Bly*, the ALJ does not identify the terms that Dr. Starace uses that are allegedly inappropriate nor explain what "appropriate" language would be. *Bly*, 2025 WL 1316497, at \*13. Although Defendant suggests that this conclusion reflects the ALJ's consideration of the supportability factor, "the ALJ does not explain how this alleged misuse of terms renders the opinion more or less 'relevant' for purposes of assessing supportability."

16

*Id.*; *see* 20 C.F.R. § 404.1520c(c)(1). Although Defendant points to language that it the ALJ might have been referring to, "the Commissioner's *post hoc* rationalization of how the ALJ could have applied the factors does not cure the ALJ's deficiency." *Sparks*, 2022 WL 4546346, at *10 (citation modified). Consistent with its prior holding, the Court is unable to assess how and why the ALJ decided that the language employed by Dr. Starace rendered the opinion less persuasive. *See Bly*, 2025 WL 1316497, at *14. Specifically, the ALJ's conclusory statements do not allow this Court to understand how the ALJ considered supportability.

As a result, the ALJ's discussion of Dr. Starace's opinion "leaves the Court to wonder how the ALJ reached her conclusion." *Id.* Accordingly, as in *Bly*, the Court cannot find that the ALJ appropriately weighed Dr. Starace's opinion because the ALJ failed to consider the supportability factor as the regulations require. *Id.* "This failure frustrates the Court's ability to determine whether Plaintiff's disability determination was supported by substantial evidence." *Id.*

### b. Dr. Mannis's assessment

Nicole Mannis, Psy.D., reviewed the evidence and opined on Plaintiff's residual functional capacity as a part of Plaintiff's disability determination dated July 16, 2023. TR 126-28, 135-37. Regarding social interaction limitations, Dr. Mannis wrote in summary that Plaintiff can "cooperate on simple, routine tasks and transactions." TR 127. Specifically, Dr. Mannis found Plaintiff was moderately limited in her ability to "interact appropriately with the general public" and "accept instructions and respond appropriately to criticism from supervisors," while she was not significantly limited in her ability to "ask simple questions or request assistance," "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." *Id.* With respect to adaptation limitations, Dr. Mannis summarized that Plaintiff can

17

"adapt to most changes and task demands on a sustained basis." *Id.* Dr. Mannis found a moderate limitation in Plaintiff's ability to "respond appropriately to changes in the work setting" and no limitations in her ability to "be aware of normal hazards and take appropriate precautions," "travel in unfamiliar places or use public transportation," and "set realistic goals or make plans independently of others." *Id.* With respect to social and adaptation changes, Dr. Mannis summarized: "[Plaintiff] can cooperate effectively with public and co-workers in completing simple tasks and transactions. Claimant can adjust to the mental demands of most new task settings." *Id.*

The ALJ summarized Dr. Mannis's conclusion as follows:

[Dr. Mannis] found the claimant has moderate mental limitations. Dr. Mannis opined the claimant can understand and retain simple instructions; has limited ability to sustain concentration, persistence, or pace for complex tasks for an extended period but should be able to complete simple tasks for an eight-hour period at an appropriate pace and sustain this level across days and weeks; can cooperate on simple, routine tasks and transactions; and can adapt to most changes and task demands on a sustained basis. Dr. Mannis further opined that the claimant can understand, retain, and carry out simple instructions; can consistently and usefully perform routine tasks on a sustained basis with minimal supervision; can cooperate effectively with the public and coworkers in completing simple tasks and transactions; and can adjust to the mental demands of most new task settings (Exs. 8A, 10A).

TR 28-29. Ultimately, the ALJ discounted Dr. Mannis's opinion in part, stating:

The undersigned finds Dr. Mannis' assessment is generally persuasive because it is generally consistent with the totality of the claimant's treatment records for her mental health impairments in the period in question. However, Dr. Mannis' assessment is not fully consistent with the subsequently received medical evidence of record; thus, it is not fully persuasive in regard to the claimant's social and adaptive functioning.

TR 29.

Plaintiff challenges the ALJ's rejection of Dr. Mannis's opinion regarding Plaintiff's social functioning. Docket No. 11-2, p. 13. Plaintiff argues that the ALJ's supportability and consistency analysis was insufficient. *Id.* at 13-14. The consistency analysis, Plaintiff contends, is

"perfunctory." *Id.* at 13. Specifically, Plaintiff takes issue with the ALJ's failure to identify which parts of Dr. Mannis's opinion were inconsistent with the evidence, which evidence creates this inconsistency, and why. *Id.* at 14. Moreover, Plaintiff argues that the ALJ erred by not addressing the supportability factor. *Id.* Additionally, Plaintiff argues that the ALJ's rejection of Dr. Mannis's opinion is inconsistent with the RFC reached by the ALJ. *Id.* at 13. Dr. Mannis opined that Plaintiff can cooperate effectively with the public and coworkers in completing simple tasks, and the ALJ's rejection of Dr. Mannis's social limitations opinion, Plaintiff argues, "implies that the ALJ found that Plaintiff's ability to cooperate effectively with coworkers is at least somewhat limited." *Id.* at p. 13. This rejection, Plaintiff argues, is inconsistent with the ALJ's ultimate conclusion that Plaintiff can "interact appropriately with coworkers." *Id.* at 13; Docket No. 14, p. 3.

Defendant asserts that the ALJ's Dr. Mannis's opinion is consistent with the RFC. Docket No. 13, p. 12-13. Specifically, Defendant highlights that Dr. Mannis opined that Plaintiff could perform simple tasks with minimal supervision and effectively cooperate with the public and co-workers, while the ALJ similarly concluded that Plaintiff could perform simple tasks, appropriately interact with co-workers and supervisors, and have occasional interaction with the public. *Id.* at 13. With respect to the consistency factor, Defendant points to the ALJ's conclusion that Dr. Mannis's findings were generally consistent with the totality of Plaintiff's treatment records. *Id.* Defendant cites the ALJ's discussion of Plaintiff's treatment records earlier in the opinion as supporting the ALJ's determination. *Id.* The supportability factor, Defendant suggests, was addressed by the ALJ's conclusion that Dr. Mannis's opinion was not fully consistent with the subsequently received medical evidence of record. *Id.*

Plaintiff replies that Defendant's response only proffers medical evidence that the ALJ

never pointed to "as her reason for rejecting Dr. Mannis' social limitations nor do the records clearly show any inconsistency with Dr. Mannis' findings." Docket No 14, p. 3.

The ALJ does not "explain how [she] considered" the supportability factor in analyzing Dr. Mannis's assessment. 20 C.F.R. § 404.1520c(b)(2). Defendant's suggestion that the ALJ's conclusion that Dr. Mannis's assessment was not fully consistent with the subsequently received medical evidence of record reflects consideration of supportability is unconvincing. Docket No. 13, p. 13. Because this part of the ALJ's discussion concerns how consistent the assessment is "with the evidence from other medical sources . . . in the claim," it clearly evinces consideration of the consistency factor, rather than the supportability factor. 20 C.F.R. § 404.1520c(c)(2).

The ALJ's consistency analysis does not identify with specificity which of Dr. Mannis's opinions are inconsistent with the record or what medical evidence it contradicts. First, the ALJ concluded that Dr. Mannis's assessment generally accorded with claimant's treatment records, which the ALJ summarized elsewhere in the opinion. TR 25-26, 29. The ALJ further found that the subsequently received medical evidence of record contradicts Dr. Mannis's conclusions with regard to social and adaptive functioning to some extent. TR 29. The ALJ does not explain what subsequently received medical evidence she refers to or how it is inconsistent with Dr. Mannis's opinions. *See id.* Further, the ALJ does not clearly identify which of Dr. Mannis's opinions are inconsistent with the record. *Id.* The ALJ's conclusion that Dr. Mannis's opinions are not "fully consistent" with the record implies that some portion of Dr. Mannis's opinions is consistent with the record, while another portion is inconsistent. *Id.* That the assessment "is not fully persuasive in regard to the claimants social and adaptive functioning" suggests that some portion of these opinions are persuasive while another is not. *Id.* The ALJ does not explain with specificity which opinions are rejected. Without a clear explanation of what parts of the opinion were inconsistent

with the record or what evidence creates this inconsistency, the ALJ's assertions regarding consistency simply do not allow this Court to understand and review the ALJ's consistency analysis. *See Bly*, 2025 WL 1316497, at \*13-14.

Here too, the Court is left to speculate how the ALJ reached her conclusion. Accordingly, the Court cannot find that the ALJ appropriately weighed Dr. Mannis's opinion because the ALJ failed to consider the supportability and consistency factors as the regulations require. *See id.* at 14 ("This failure frustrates the Court's ability to determine whether Plaintiff's disability determination was supported by substantial evidence."); *Lorraine R.*, 2022 WL 4232839, \*4-5 (explaining the articulation requirement "ensures that claimants will receive an explanation of why the ALJ found each medical opinion . . . to be persuasive, partially persuasive, or not persuasive"); *Bly*, 2025 WL 1316497 at \*10 (failure to meet "minimum levels" of articulation of consistency and supportability "frustrates" the court's ability to determine if the ALJ's decision was supported by substantial evidence).

### c. Dr. Dalton's assessment

Brady Dalton, Psy.D., reviewed the evidence and opined on Plaintiff's residual functional capacity as a part of Plaintiff's June 10, 2021 disability determination, which was associated with a prior application for SSI. TR 75-78. Dr. Dalton summarized Plaintiff's social interaction limitations as follows: "The clmt [*sic*] would do best in a work setting that does not require general public contact. She has sufficient ability to maintain appropriate behavior in a context of limited peer interaction; is capable of accepting simple instructions and responding appropriately to feedback from supervisors." TR 77. More specifically, Dr. Dalton found the Plaintiff was markedly limited in her ability to "interact appropriately with the general public," moderately limited in her ability to "accept instructions and respond appropriately to criticism from

supervisors" and "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and not significantly limited in her ability to "ask simple questions or request assistance." *Id.* With respect to Plaintiff's adaptation limitations, Dr. Dalton summarized: "Clmt [*sic*] would work best in environments with predictable work tasks and with minimal social contacts with others that do not require a great deal of decision making or goal setting." TR 78. Dr. Dalton found Plaintiff had moderate limitations in her ability to "respond appropriately to changes in the work setting," "travel in unfamiliar places or use public transportation," and "set realistic goals or make plans independently of others." *Id.*

The ALJ summarized Dr. Dalton's conclusion as follows:

[Dr. Dalton] found the claimant has mild and moderate mental limitations. Dr. Dalton opined the claimant can carry out simple and detailed instructions, follow simple work-like procedures, and make simple work-related decisions; she appears to have adequate ability to sustain attention throughout extended periods of time of up to two hours at a time; she appears to have adequate ability to perform at a consistent pace particularly if she is engaged in a simple to semi-skilled (detailed but not complex) task; she appears to have an adequate ability to maintain a regular schedule; she would do best in a work setting that does not require general public contact; she has sufficient ability to maintain appropriate behavior in the context of limited peer interaction; she is capable of accepting simple instructions and responding appropriately to feedback from supervisors; and she would work best in environments with predictable work tasks and with minimal social contacts with others that do not require a great deal of decision-making or goal setting (Ex. 2A).

TR 27-28. Ultimately, the ALJ discounted Dr. Dalton's opinion, stating:

The undersigned finds Dr. Dalton's assessment is not persuasive because it is not expressed in appropriate and specific vocational terms for assessing mental limitations. Furthermore, Dr. Dalton's assessment is not fully consistent with the claimant's treatment records or reports of the claimant's activities of daily living.

TR 28.

Plaintiff objects to the ALJ's rejection of Dr. Dalton's opinion on two grounds. First, Plaintiff argues that the ALJ does not explain what part of Dr. Dalton's opinion was "not expressed in appropriate and specific vocational terms" nor explain the basis for this assertion. Docket No.

11-2, p. 14-15, quoting TR 28.  Additionally, Plaintiff contends that the ALJ's consistency analysis was deficient because the ALJ did not identify what part of Dr. Dalton's opinion was inconsistent with claimant's treatment records or activities of daily living or explain why it was inconsistent. *Id.* at 15.

Defendant argues that the ALJ's rejection of Dr. Dalton's findings was proper.  Docket No. 13, p. 10-12.  Defendant provides an example in support of the ALJ's determination that Dr. Dalton's assessment was not expressed in appropriate and specific vocational terms: "Dr. Dalton did not explain what he meant by 'limited' peer interaction."  *Id.* at 11.  Defendant also cites the ALJ's conclusion regarding specific and vocational terms as reflecting proper consideration of supportability.  *Id.*  Consistency, Defendant indicates, was appropriately explained by the ALJ's statement that Dr. Dalton's assessment is not fully consistent with the claimant's treatment records or reports of the claimant's activities of daily living.  *Id.*  Defendant cites the ALJ's discussion of Plaintiff's treatment records earlier in the opinion as supporting the ALJ's determination.  *Id.*

Plaintiff replies that this Court cannot affirm the ALJ's decision based on Defendant's *post hoc* explanation of the ALJ's determination that Dr. Dalton's opinion was not expressed in appropriate and specific vocational terms.  Docket No. 14, p. 2.  In any case, Plaintiff argues, Defendant does not address Plaintiff's argument that "the ALJ failed to identify what part of Dr. Dalton's opinion he believed was not properly expressed, nor the ALJ's reasoning."  *Id.*  Regarding the consistency factor, Plaintiff remarks that Defendant similarly attempted to supply *post hoc* explanations of the evidence inconsistent with Dr. Dalton's opinion, but this does not excuse the ALJ's omission.  *Id.*  Further, Plaintiff argues, "this evidence does not appear to relate to social limitations and Defendant does not explain how this evidence would be inconsistent."  *Id.* (citation modified).

As with the analysis of Dr. Starace's assessment, the ALJ's assertion regarding "appropriate and specific vocational terms" leaves this Court unable to assess how and why the ALJ decided that the language employed by Dr. Dalton rendered the opinion less persuasive. Here too, the ALJ does not identify the terms that Dr. Dalton uses that are allegedly inappropriate nor explain what "appropriate" language would be. *See Bly*, 2025 WL 1316497, at *13. It is not clear what this assertion means, much less how it relates to the supportability factor. Again, Defendant's "*post hoc* rationalization of how the ALJ could have applied the factors does not cure the ALJ's deficiency." *Sparks*, 2022 WL 4546346, at *10 (citation modified). Consistent with its prior holding in *Bly*, the Court is unable to assess how and why the ALJ decided that the language employed by Dr. Dalton rendered the opinion less persuasive. *See Bly*, 2025 WL 1316497, at *13. Specifically, the ALJ's conclusory statements do not allow this Court to understand how the ALJ considered supportability.

The ALJ's consistency analysis does not identify with specificity which of Dr. Dalton's opinions are inconsistent with the record or what medical evidence it contradicts. Regarding consistency, the ALJ simply states: "Dr. Dalton's assessment is not fully consistent with the claimant's treatment records or reports of the claimant[']s activities of daily living." TR 28. This assertion does not make clear which opinion or opinions within Dr. Dalton's assessment are inconsistent with the record. While the ALJ specifies two general areas of the record that she finds contradict Dr. Dalton's assessment, she does not identify specific evidence that contradicts Dr. Dalton's assessment. Without a clear explanation of what parts of the opinion were inconsistent with the record or what evidence creates this inconsistency, the ALJ's assertions regarding consistency simply do not allow this Court to understand and review the ALJ's consistency analysis. *See Bly*, 2025 WL 1316497, at *13-14.

The Court is left to speculate how the ALJ reached her conclusion. Accordingly, the Court cannot find that the ALJ appropriately weighed Dr. Dalton's opinion because the ALJ failed to consider the supportability and consistency factors as the regulations require. *See id.* at 14. "This failure frustrates the Court's ability to determine whether Plaintiff's disability determination was supported by substantial evidence." *Id.*

### d. ALJ's formulation of the RFC

Finally, Plaintiff asserts that the ALJ impermissibly "played doctor" in developing the social limitation portion of Plaintiff's RFC. Docket No. 11-2, p. 17. Plaintiff contends that the ALJ rejected the social limitation opinions submitted by all six psychological experts, then formulated the social limitations in the RFC without explaining the basis of that conclusion. *Id.* Plaintiff argues that this lack of explanation, combined with the existence of evidence contradicting the social limitations in the RFC, renders that conclusion unsupported by a logical bridge from the evidence. *Id.* at 17-18.

Defendant responds that the ALJ is not required to base the RFC determination on a particular medical opinion. Docket No. 13, p. 14-15. In any event, Defendant asserts, substantial evidence supports the ALJ's RFC finding. *Id.* at 4, 15.

Consistent with Defendant's argument, the Sixth Circuit has affirmed that the ALJ's RFC finding "does not need to correspond to a particular physician's opinion"; indeed, there is no "bright-line rule. . . directing that medical opinions must be the building blocks of the residual functional capacity finding." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019). However, the ALJ "must make a connection between the evidence relied on and the conclusion reached." *Id.* As another court put it: "There is no regulatory requirement that the ALJ deem any opinion of record 'persuasive.' However, the regulations do require that the ALJ clearly explain

his consideration of the opinions and identify the evidence supporting his conclusions." *Lester*, 2020 WL 8093313, at *14.

The ALJ did not make the necessary connection here with respect to the social and adaptive functioning areas of Plaintiff's RFC. It is not clear what evidence was relied upon to formulate this portion of the RFC because the ALJ's analysis of the opinion evidence is unclear and the ALJ does not otherwise explain what evidence contributed to this conclusion. The ALJ found the medical opinions of Dr. McQuain (TR 26), Dr Dalton (TR 27-28), Dr. Cambell (TR 28), and Dr. Germek (TR 28) to be unpersuasive. The ALJ considered Dr. Mannis's opinion "generally persuasive" but stated that due to a lack of consistency with the record, "it is not fully persuasive in regard to the claimant's social and adaptive functioning." TR 29. Similarly, the ALJ concluded Dr. Starace's assessment was partially persuasive, but characterized his opinions regarding Plaintiff's social and adaptive functioning as "not specific vocationally," suggesting that he did not fully credit those opinions. TR 28. The Court agrees with Plaintiff that the ALJ opinion does not make clear which portions of Dr. Starace's and Dr. Mannis's opinions on social and adaptive functioning areas were credited or rejected, nor does it coherently explain the basis for those determinations. Relatedly, the opinion contains no explanation of how the social and adaptive functioning limitations correspond to the evidence of record, "which is required for an opinion to enjoy the support of substantial evidence." *Johnson v. Saul*, No. 1:18-0041, 2019 U.S. Dist. LEXIS 131570, 2019 WL 3647058, at *5 (M.D. Tenn. July 19, 2019), *report and recommendation adopted*, No. 1:18-CV-00041, 2019 U.S. Dist. LEXIS 131568, 2019 WL 3574250 (M.D. Tenn. Aug. 6, 2019) (citing *Wilkerson v. Comm'r of Soc. Sec.*, 278 F. Supp. 3d 956, 970 (E.D. Mich. 2017) (holding that an RFC determination that "fails to provide an accurate and logical bridge between the evidence and the result" is not supported by substantial evidence) (internal citations

26

omitted)).  This lack of clarity frustrates the Court's ability to meaningfully review the ALJ's FRC determination.  This Court notes that "[u]ltimately, a reasoned explanation of the medical record and Plaintiff's physical impairments may support a similar finding," but holds that the ALJ failed to make a sufficient connection between the evidence relied on and the RFC conclusion reached.  *Williams v. Saul*, No. 3:18-CV-395-DCP, 2019 U.S. Dist. LEXIS 206920, 2019 WL 6481285, at *7 (E.D. Tenn. Dec. 2, 2019).  Therefore, this case should be remanded so that the ALJ may explain her analysis of the opinion evidence and her formulation of the FRC.

Defendant argues that substantial evidence supports the ALJ's RFC finding.  But "[e]ven if the Court 'were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with [the regulations] as harmless error.'"  *Hardy*, 554 F. Supp. 3d at 908 (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009)).[3]

### e.  VE's alternative hypothetical

Defendant makes a final argument that remand is not warranted.  Based on the ALJ's finding that Plaintiff could appropriately interact with co-workers and supervisors, and could occasionally interact with the public, the VE testified that an individual with these limitations could perform certain work that existed in the economy.  Docket No. 13, p. 7-8.  In response to an alternative hypothetical posed by the ALJ, the VE further testified that an individual with no

---

[3] "In some instances, the failure to apply the rules properly can be harmless error, such as where 'a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it,' or where the Commissioner 'has met the goal of ... the procedural safeguard of reasons.'"  *Gross v. Kijakazi*, No. 1:21-CV-00022,  2022 U.S. Dist. LEXIS 161435, 2022 WL 4102774, at *8, n.8 (M.D. Tenn. Aug. 19, 2022), *report and recommendation adopted*, No. 1:21-CV-00022,  2022 U.S. Dist. LEXIS 161224, 2022 WL 4097708 (M.D. Tenn. Sept. 7, 2022) (quoting *Hardy*, 554 F. Supp. 3d at 909).  Defendant has not argued that either applies here, and the Court finds they do not.

interactions with the public and occasional interaction with co-workers and supervisors would be able to work those same jobs. *Id.* at 8. Therefore, Defendant argues: "[I]n order for Plaintiff to show that she was unable to perform the jobs relied upon by the ALJ, Plaintiff must show that she has greater limitations than no interaction with the general public and occasional interaction with co-workers and supervisors. Otherwise, the ALJ's decision should be affirmed." *Id.* Because "Plaintiff has made no showing that the medical opinions found unpersuasive by the ALJ would cause even greater limitations than proposed in the alternative hypothetical question," Defendant claims, "even if the ALJ erred in evaluating the opinion evidence, it would not warrant remand." *Id.* at 16.

> Plaintiff replies to this argument accordingly:

> Had the ALJ not erred, she may have included additional social limitations which, per the VE's testimony, may have precluded Plaintiff from the jobs found at step 5. For example, Dr. Dalton's opinion supports greater limitations than no "interaction" with the general public, as his opinion is phrased in terms of a work setting without public "contact", which would preclude working in areas open to the public. Dr. Dalton also opined "limited peer interaction" which could equate to greater than occasional interaction with coworkers. Further, Dr. Dalton's opinion of "simple instructions" could transfer to greater than occasional interaction with supervisors.

Docket No 14, p. 4.

The Court cannot speculate what the ALJ's RFC finding might be after considering the opinion evidence in accordance with the regulations. "This court does not weigh evidence, assess credibility, or resolve conflicts in testimony—that's the ALJ's job." *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 588 (6th Cir. 2019).

### 2. Failure to account for Plaintiff's impairments of IBS and GERD in formulating Plaintiff's RFC

Plaintiff asserts that the ALJ must consider limitations imposed by all of a claimant's impairments, including non-severe impairments, and consider the combined effect of all

impairments when formulating the claimant's RFC. Docket No. 11-2, p. 20. Here, Plaintiff argues, the ALJ erred by failing to properly consider Plaintiff's impairments of IBS and GERD. *Id.* at 21. The ALJ's finding that these impairments were non-severe at step two, Plaintiff argues, reflects an acknowledgement that Plaintiff had at least some level of limitations due to those conditions. *Id.* In support of this argument, Plaintiff cites the following statement in the ALJ's opinion: "The evidence shows the claimant's GERD and IBS do not more than mildly limit her functioning for a duration of 12 consecutive months; therefore, they are nonsevere." *Id.*, quoting TR 22 (internal quotation marks omitted). Additionally, Plaintiff highlights that the ALJ considered Plaintiff's testimony about symptoms consistent with those conditions and found that Plaintiff's testimony as a whole "was at least somewhat consistent with the evidence," implying that the ALJ credited Plaintiff's testimony of her need to use the restroom for her IBS. *Id.* at 21-22. However, Plaintiff argues, the ALJ did not account for any limitations related to GERD or IBS in the RFC or explain why they were not included. *Id.* at 22-23.

> Defendant responds:
>
> Plaintiff's argument ignores the ALJ's consideration of the opinion evidence. The medical experts found that Plaintiff's IBS and GERD imposed no work related limitation and, therefore, the ALJ properly excluded any limitations from the RFC. There is no medical opinion that Plaintiff's IBS or GERD imposed any work-related limitations.

Docket No. 13, p. 16 (internal citations omitted). Specifically, Defendant points out that the ALJ considered the opinion of Dr. Keown that that Plaintiff had no work-related physical restrictions and found the assessment persuasive after properly considering consistency and supportability. *Id.* Likewise, Defendant argues, the ALJ found the consonant opinions of Dr. Rabelo, Dr. Przybyla, Dr. Chaudhuri persuasive. *Id.* at 16-17. Defendant argues that the ALJ properly found based on the opinion evidence that Plaintiff's IBS and GERD imposed no work-related limitations. *Id.* at 17.

In response to Defendant's argument that the medical consultants found no work-related limitation related to Plaintiff's IBS and GERD, Plaintiff argues that the ALJ never explained that this was basis for the exclusion of any limitations related to those conditions. Docket No. 14, p. 5. Therefore, Plaintiff argues, "Defendant's attempt to provide rationale when the ALJ did not do so is nothing more than impermissible *post hoc* rationalization." *Id.* Additionally, Plaintiff points out that Dr. Keown's examination was from August 2021 and Dr. Keown only saw Plaintiff one time, while the other consultants whose opinions the ALJ considered did not examine Plaintiff. *Id.* Finally, Plaintiff highlights that Plaintiff's testimony supports the existence of limitations related to the two conditions, which the ALJ reviewed but the consultants did not. *Id.*

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 CFR § 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the Regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities; conversely, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. *Id.*; 20 CFR §§ 404.1521(a), 416.920(c), 416.921(a), 404.1522(a). The Sixth Circuit has described the severity determination as "a *de minimis* hurdle" in the disability determination process, the goal of which is to screen out groundless claims. *Higgs v. Bowen*, 880 F. 2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of Health & Human Servs.*, 773 F. 2d 85, 89 (6th Cir. 1985). Additionally, a diagnosis alone does not establish a condition's severity or its effect on a claimant's functional limitations; rather, a claimant must offer evidence or arguments showing that a restriction resulting from an impairment requires greater limitations than those found in the ALJ's RFC determination. *Lyons v. Comm'r of Soc. Sec.*, No. 310-cv-502, 2012 WL 529587, at *4 (E.D. Tenn. Feb. 17, 2012).

Determining a claimant's limitations for purposes of establishing an RFC occurs in steps four and five of the sequential evaluation process and requires consideration of the combined effect of the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B); 20 CFR §§ 404.1520, 404.1545, 416.920.

At step four of the sequential evaluation process, the ALJ assessed Plaintiff's physical functioning. TR 29. The ALJ considered Plaintiff's testimony about her IBS and GERD, stating:

> The claimant testified that she has mental and physical conditions that interact with each other. She stated that she has stomach issues, including GERD, and she has problems with vomiting after she eats. She also stated that she has difficulty speaking due to her throat problems. The claimant testified that she has severe IBS and must frequently use the bathroom.

TR 24. The ALJ also considered the medical opinion evidence. TR 29. The ALJ wrote:

> In regard to the claimants physical functioning, on August 3, 2021, consultative examiner, Donita Keown, M.D., examined the claimant and found she has no physical restrictions (Ex. 6F). The undersigned finds Dr. Keowns assessment is persuasive because it is supported by her examination findings, and it is consistent with the claimants treatment records.

*Id.* Noting consistency with Dr. Keown's opinion, the ALJ also found persuasive the findings of Jose Rabelo, M.D., Andrew Przybyla, M.D., and Kanika Chaudhuri, M.D. (TR 29), who found that Plaintiff's physical impairments were non-severe (TR 71, 89-90, 123-24). The ALJ's adoption of Dr. Keown's opinion indicates that the ALJ excluded Plaintiff's IBS and GERD from the RFC analysis, having determined those conditions imposed no limitations on Plaintiff's ability to work. As has been demonstrated, the ALJ evaluated the medical and testimonial evidence of record and ultimately determined that Plaintiff has no physical limitations. TR 29. The ALJ properly evaluated the evidence in reaching this determination, and the Regulations do not require more.

Contrary to Plaintiff's assertions, the ALJ's finding at step two that Plaintiff's IBS and GERD constituted non-severe impairments is consistent with the ALJ's step four finding that these impairments imposed no work-related limitations. An impairment is not severe if it does not

31

significantly limit a claimant's physical or mental ability to do basic work activities; this includes impairments that do not impose any limitation on ability to work. § 404.1522. Nor does the ALJ's finding that Plaintiff's "GERD and IBS do not more than mildly limit her functioning for a duration of 12 consecutive months" contradict the RFC determination. TR 22.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion (Docket No. 11) is **GRANTED**, and this matter is **REMANDED** for further proceedings consistent with this Memorandum Opinion.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**